# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

CLEVELAND EVANS                                                                    PETITIONER
ADC #147756

v.                                       5:17cv00065-JLH-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                  RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

1

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## I.  INTRODUCTION

The factual and procedural backgrounds surrounding the conviction and post-conviction appeals of Mr. Evans have been recounted in the Proposed Findings and Recommendations filed March 21, 2017. (*See* Doc. No. 7.) I had previously recommended Mr. Evans's Petition be dismissed as time barred. (*Id.*) But based on Petitioner's Objections, presiding District Judge J. Leon Holmes declined to adopt that recommendation and referred this matter back to me to develop the record and make a finding on the issue of equitable tolling. (Doc. No. 11.) Accordingly, I appointed counsel for Petitioner and conducted an evidentiary hearing on October 2, 2017. (Doc. No. 28.) John Wesley Hall, Jr., Esq., appeared for Petitioner and Assistant Attorneys General Christian Scholfield Harris and Amanda J. Jegley appeared for Respondent. Counsel for both sides are to be commended for their excellent representation of their respective clients.

After careful consideration of the Petition and the hearing testimony and evidence, for the following reasons, I find Mr. Evans does not qualify for equitable tolling and his Petition should be dismissed as time barred.

## II.  EVIDENTIARY HEARING

At the hearing, Petitioner testified and called his mother, Charlene Hatter. The Respondent called Petitioner's attorney for post-conviction proceedings, Bill Luppen, Esq.

### A.  Charlene Hatter

According to Ms. Hatter's testimony, she performed most of the work in pursuing legal avenues of relief for her son. She hired attorney Bill Luppen to represent him in his post-conviction relief endeavors in July 2011. She said she spoke with Mr. Luppen on a regular basis, and paid him for his services every two weeks for a period of roughly five years. Ms. Hatter estimated she paid Mr. Luppen a total of around $26,000 for the work he performed on behalf of her son. However, Ms. Hatter had no receipts to support this contention.

Ms. Hatter testified that in January 2014, after the Arkansas Supreme Court denied her son Rule 37 relief, Mr. Luppen told her he would file a petition for writ of habeas corpus. Around this same time, Ms. Hatter said she was contacted by her son who told her there was a possibility he was running out of time to file the federal habeas petition. So Ms. Hatter contacted Mr. Luppen about the habeas limitations period, but Mr. Luppen told her that the time limit did not pertain to her son. Ms. Hatter admitted she did not know whether Mr. Luppen was necessarily referring to a state or federal habeas petition. Ultimately, Ms. Hatter testified that she stopped paying Mr. Luppen in either late 2015 or early 2016 because she felt like he was not doing anything for the case.

### B.  Petitioner Cleveland Evans

Petitioner testified that he filed his *pro se* Rule 37 petition in March 2011. His mother hired Bill Luppen in July 2011 to represent him from that point forward. Mr. Evans reported that his normal line of communication with Mr. Luppen was through his mother; he would send

questions to Ms. Hatter who would in turn relay them to Mr. Luppen. Mr. Evans also said he once tried to contact Mr. Luppen directly by using a contraband cell phone and when he called, he identified himself as his brother to Mr. Luppen's secretary in an attempt to get updates on his case. Mr. Evans admitted he never took any action to see that Mr. Luppen was put on his approved caller list at the prison. Additionally, Mr. Evans said he sent approximately four letters to Mr. Luppen over the course of his five-year representation.

In January 2012, the Pulaski County Circuit Court held a hearing and the judge denied relief from the bench. Mr. Evans said that, immediately after the hearing, he met with Mr. Luppen in the basement of the courthouse and discussed the idea of Mr. Luppen filing a federal habeas petition. According to Mr. Evans, Mr. Luppen said federal habeas was a possibility and he should have his mother get in contact with him about it.

Mr. Evans testified he had never read the federal habeas statutes, but other inmates told him about the one-year limitation period. Despite having this information from his fellow inmates, Mr. Evans relied on his mother's report that Mr. Luppen said "there is no one year limitation" on a federal habeas.

Mr. Evans testified that in 2015 or 2016, his mother told him she did not know what else they could do. At that point, Mr. Evans took it upon himself to get together with other inmates to draft and file the instant federal habeas Petition. He said the process of getting his Petition together took around six months.

  C. Bill Luppen, Esq.

Bill Luppen testified that he is a criminal defense attorney and was hired to represent Petitioner in July 2011, to litigate the Rule 37 petition that Mr. Evans had already filed *pro se*. Mr. Luppen said he did not know exactly what he charged for his work on the case, but said he

could not think of a reason it would be more than $1,500 at the highest estimate. Mr. Luppen strongly denied being paid $26,000 for his work on the case. When subpoenaed for the habeas hearing, he looked through his receipts, but could find only one receipt for $1,250 paid by Charlene Hatter on January 31, 2012. The receipt notes the fee was used for the purpose of "court reporter & witness expert." Mr. Luppen said his law office had been broken into and some of his receipt books had been stolen. Mr. Luppen also reported he had no engagement letter for this representation of Mr. Evans, as engagement letters were not generally a part of his practice.

Mr. Luppen testified he was hired solely to litigate Mr. Evans's Rule 37 petition. After they lost with the trial court, he agreed to file the appeal without charging an additional fee. He said while he could not remember for certain, he likely did meet with Petitioner in the basement of the courthouse as Mr. Evans had reported. Mr. Luppen said he would have instructed Mr. Evans to let his mother know he needed her to pay for the cost of the transcript but he would represent him at no additional cost. Mr. Luppen's testimony on this point is corroborated by the January 31, 2012, receipt for "Cleveland Evans Court reporter and witness expert." (Resp.'s Ex. 2.) Mr. Luppen said it would not have made sense for him to have discussed filing a federal habeas petition at that stage of the proceedings.

Mr. Luppen continued his representation until the Arkansas Supreme Court affirmed the trial court's decision. After the Supreme Court's ruling, Mr. Luppen said he discussed with Ms. Hatter other possible avenues of relief through scientific testing. He explained to her that a state habeas petition was a possibility, but he would have to look into the viability of such a petition based upon new scientific testing. Mr. Luppen testified that the topic of him filing a federal habeas petition, "Never came up." Mr. Luppen said he did explore other potential avenues but ultimately concluded he had no basis to seek additional relief on behalf of Mr. Evans. Thus, Mr.

Luppen returned $500 from his client account on December 12, 2015. This is corroborated by his calendar notation for December 12, 2015, stating "Ms. Hatter 500.00 ✓." (Resp.'s Hrg. Ex. 3.) He also remembered giving Ms. Hatter a "small file" of the case materials at that time. All in all, Mr. Luppen steadfastly denied agreeing to file a federal petition for writ of habeas corpus because he has only filed one such petition in all the years of his practice.

**III.   ANALYSIS**

Title 28 U.S.C. § 2244(d)(1) and (2) impose a one-year period of limitation on petitions for writ of habeas corpus:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

The one-year limitations period for filing a federal petition for a writ of habeas corpus begins on "the date when the judgment became final by conclusion of direct review or the

expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). For Mr. Evans, that clock began counting down on January 16, 2014 – the date the Arkansas Supreme Court issued its opinion denying relief for Mr. Evan's Rule 37 petition – and the clock stopped on January 15, 2015. *Evans v. State*, 2014 Ark. 6.

Thus, a successful Petition for Mr. Evans hinges on the applicability of equitable tolling. The United States Supreme Court has ruled that the statute of limitations period associated with 28 U.S.C. § 2241(d) is only subject to equitable tolling if the petitioner can show: (1) he has been "pursuing his rights diligently," but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).

I find wholly incredible Mr. Evans's claim that his attorney, Mr. Luppen, failed to follow through with his promise to file a federal habeas petition. It is not believable that Mr. Evans and Mr. Luppen discussed filing a federal habeas petition immediately after the trial court denied Rule 37 relief. As Mr. Luppen testified, it is illogical and inconsistent that he would be discussing federal habeas relief when his focus was on filing an appeal to the Arkansas Supreme Court.

And while Ms. Hatter is clearly a loving mother desperately trying to help her son under dire circumstances, her testimony was also not credible. Ms. Hatter could not provide a single receipt that verified her claim that she paid Mr. Luppen approximately $26,000 for his services. And based on the testimony received at the hearing, I find Ms. Hatter was told only of the possibility of pursuing state habeas relief should Mr. Luppen discover a new scientific means for relief. Mr. Luppen was unsuccessful in his efforts and returned the money to Ms. Hatter as shown by Respondent's Exhibit 2.

I fully credit Mr. Luppen's testimony and in no way find his conduct rises to the level of an "extraordinary circumstance" as defined by the Eighth Circuit Court of Appeals in *United States*

*v. Martin*, 408 F.3d 1089, 1098 (8th Cir. 2005). Additionally, Mr. Evans has not alleged any extraordinary circumstance that kept him from filing his Petition *himself* within the one-year limitation period. Indeed, Mr. Evans initially filed his Rule 37 petition *pro se*. Mr. Evans claims other inmates communicated the federal habeas petition statutory limitation to him on multiple occasions, but he failed to act on them. Petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law, do not justify equitable tolling. *See*, *e.g., Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004). In other words, where a habeas petitioner has encountered "the kinds of obstacles faced by many if not most habeas petitioners," equitable tolling is not available because Congress is presumed to have considered such obstacles in determining that one year represents a fair and appropriate limitations period. *Runyan v. Burt*, 521 F.3d 942, 945-46 (8th Cir. 2008). Therefore, I conclude Mr. Evans's Petition for Writ of Habeas Corpus should be dismissed as time-barred.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." I find no issue on which Mr. Evans has made a substantial showing of a denial of a constitutional right. Therefore, no certificate of appealability should be issued.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. The Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED as time-barred.

2. A certificate of appealability should not be issued.

DATED this 18th day of October, 2017.

                                                     JOE J. VOLPE  
                                                     UNITED STATES MAGISTRATE JUDGE